**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**EVANSVILLE DIVISION**

| | | |
|---|---|---|
| JEFFREY B. CUTCHIN, Personal Representative of the Estates of Claudine D. Cutchin and Adelaide E. Cutchin, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 3:18-cv-00028-TWP-MPB |
| INDIANA DEPARTMENT OF INSURANCE, STEPHEN W. ROBERTSON, | ) ) ) | |
| Intervenor Defendant. | ) ) | |

## ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

This matter is before the Court on Cross-Motions for Summary Judgment filed pursuant to Federal Rule of Civil Procedure 56. Intervenor Defendant Stephen W. Robertson, Commissioner of the Indiana Department of Insurance, Administrator of the Indiana Patient's Compensation Fund ("PCF") filed a summary judgment motion on August 23, 2019. (Filing No. 73). That same date, Plaintiff Jeffrey B. Cutchin ("Cutchin") filed a cross-motion. (Filing No. 76). Cutchin initiated this action against Anonymous Healthcare Provider 1 and Anonymous Healthcare Provider 2, following the tragic deaths of his wife and daughter, alleging that their medical care and treatment fell below the standard of care, which led to the wrongful deaths of his wife and daughter. Cutchin amended his Complaint to add a request for declaratory judgment, thereafter, the PCF intervened in the case to protect its interests implicated by the Amended Complaint. Cutchin reached an agreement to settle his claims with Anonymous Healthcare Providers 1 and 2, and the cross-motions for summary judgment followed. For the reasons explained below, the Court **grants** the PCF's Motion and **denies** Cutchin's Motion.

# I.     BACKGROUND

The Indiana Medical Malpractice Act, Indiana Code § 34-18 *et seq.*, provides the statutory framework for medical negligence claims in the state of Indiana.  As part of this statutory framework, the Indiana General Assembly created the Patient's Compensation Fund ("PFC"), which allows a claimant to seek payment from the fund for an amount in excess of a health care provider's liability limits on medical malpractice claims.  *See* Ind. Code §§ 34-18-6; 34-18-14; 34-18-15; and generally Ind. Code § 34-18 *et seq*.  The PCF is administered by the Commissioner of the Indiana Department of Insurance.

Anonymous Healthcare Provider 1 ("Provider 1") practices medicine at Anonymous Healthcare Provider 2 ("Provider 2"), which is a medical clinic in Ft. Branch, Indiana.  Provider 1 is a "qualified provider" subject to and governed by the provisions of the Indiana Medical Malpractice Act.  Provider 1 provided medical care to Sylvia Watson ("Watson") beginning in May 2000 (Filing No. 78-1 at 3).  In the course of treating Watson for a variety of medical conditions, Provider 1 prescribed numerous medications for Watson, and in early 2017, Watson was taking at least eight different medications, including an opioid, prescribed by Provider 1 (Filing No. 82-1 at 9).

On February 2, 2017, Watson and her granddaughter, Brandy Mayer ("Mayer"), left Taylor's Garage in Owensville, Indiana, to travel to Princeton, Indiana.  Before leaving Taylor's Garage, Mayer watched Watson take out a prescription bottle and take two pills.  Watson then drove her vehicle while Mayer was in the passenger seat.  There is a stoplight at the intersection of State Road 65 and State Road 64, and as Watson and Mayer approached the intersection, the traffic light was red.  However, Watson was unable to physically lift her foot off the gas pedal to brake for the red light.  As a result, Watson crashed her vehicle into another vehicle driven by

Claudine Cutchin (Cutchin's wife) with Adelaide Cutchin (Cutchin's daughter) as a passenger. Watson, Claudine Cutchin, and Adelaide Cutchin all died as a result of the accident. A blood test administered to Watson after the accident revealed the presence of opiates in her system (Filing No. 74-1 at 2–3; Filing No. 80-3 at 4–8).

On January 25, 2018, Cutchin simultaneously filed a proposed complaint with the Indiana Department of Insurance and his Complaint in this Court, containing parallel allegations and seeking damages against Provider 1 and Provider 2 for the wrongful deaths of his wife and daughter (Filing No. 80-5 at 3–8). In his Complaint, Cutchin alleged, "The medical care and treatment rendered to Watson by [Provider 1 and Provider 2] was substandard, breached applicable standards of care, and was careless and negligent proximately causing and contributing to the cause of the wrongful deaths of Claudine and Adelaide." (Filing No. 1 at 3.)

Cutchin further alleged, "Defendants' treatment of Watson fell below the applicable standard of care and proximately caused the wrongful death of Claudine and Adelaide" when Provider 1 and Provider 2, among other things, "failed to warn Watson about driving a motor vehicle under the influence of the drugs and various combinations of drugs which he/they prescribed". *Id.* at 3, 5. "Watson had fallen at least twice due to unknown causes within eighteen (18) months of the fatal accident, yet Defendants failed to adjust Watson's medication or warn her concerning the operation of motor vehicles." *Id.* at 4.

As a qualified health care provider under the Medical Malpractice Act, Provider 1 was insured by Medical Protective Insurance as well as the PCF. Watson was Provider 1's longtime patient from 2000 to 2017, and Provider 1 provided her medical services, treatment, and healthcare in that physician-patient relationship. Provider 1 never provided any medical services, treatment, or healthcare to Cutchin, Claudine Cutchin, or Adelaide Cutchin. Provider 1 never established a

physician-patient relationship with Cutchin, Claudine Cutchin, or Adelaide Cutchin. Cutchin, Claudine Cutchin, and Adelaide Cutchin were never Provider 1's patients, and they never received medical services from Provider 1 or his medical practice (Provider 2) (Filing No. 74-3 at 2–3).

Approximately nine months after filing his original Complaint, Cutchin filed an Amended Complaint, which added a request for a declaratory judgment concerning the applicability of the Indiana Medical Malpractice Act to the factual allegations of his Complaint. (Filing No. 26 at 6-7). Three months later, the PCF filed a Motion to Intervene as a defendant in this matter to protect its interest in administering the fund. PCF explained that if the Court were to determine that the Medical Malpractice Act applies, then the PCF possibly could be affected (Filing No. 35). PCF's position in the Motion to Intervene is that the Medical Malpractice Act does not apply because, "the case facts do not provide coverage under the Act," and the PCF should not be accessible for any excess damages. *Id.* at 10.

The Magistrate Judge scheduled a settlement conference for March 13, 2019, and the PCF filed a motion to be excused from participating in the settlement conference asserting that "this matter should not be determined under the Medical Malpractice Act," and "this case does not fall within the Act." (Filing No. 38 at 1–2.) The Magistrate Judge denied the PCF's request to be excused from the settlement conference (Filing No. 42).

On March 13, 2019, the settlement conference was held with Cutchin, Provider 1, Provider 2, a representative of Provider 1 and 2's malpractice insurer, and the PCF. A settlement was reached between Cutchin and Providers 1 and 2 for $250,000.00, the maximum amount recoverable against the doctor under the Medical Malpractice Act (Filing No. 43; Filing No. 80-7). All parties to the case, including the PCF, executed a "Memorandum of Agreement," which acknowledged the settlement, reflected the amount to be paid by Providers 1 and 2, called for

4

termination of the medical review panel proceedings as to Providers 1 and 2, and noted Cutchin's reservation of the right to pursue claims against the PCF (Filing No. 80-7).

In accordance with the Memorandum of Agreement, Cutchin dismissed Providers 1 and 2 from this litigation, accepted the $250,000.00 payment from Providers 1 and 2, and executed a "Settlement and Release Agreement". The PCF did not contribute financially to the settlement and was not a party to the formal settlement documents executed by the settling parties. However, the settlement agreement between Cutchin and Providers 1 and 2 explicitly reserved Cutchin's right to proceed against the PCF (Filing No. 86-1 at 3–4, 6–7).

On April 11, 2019, Cutchin filed a Stipulation of Dismissal of Providers 1 and 2 and "specifically reserve[ed] Plaintiff's claims and rights herein to proceed against the Defendant Indiana Patient's Compensation Fund." (Filing No. 45 at 1.) On the same day, Cutchin filed a Petition for Payment of Damages from the PCF (Filing No. 46). On April 15, 2019, the PCF represented to the Court that it "does not object to dismissal of Anonymous Healthcare Providers 1 and 2 with prejudice." (Filing No. 47 at 2.) However, the PCF objected to the stipulated dismissal to explain that the "Plaintiff's ability to proceed against the PCF under the Indiana Medical Malpractice Act I.C. §34-18-1-1 et. seq. (the 'Act') is a central dispute in this case," and "[t]he PCF has consistently taken the position that because of the nature of Plaintiff's claims, the Plaintiff has no cognizable legal right to damages from the PCF because the underlying acts are not within the purview of the Act." *Id.* at 1–2.

On June 27, 2019, Cutchin and the PCF submitted their Joint Proposed Preliminary Case Management Plan Schedule, which stated that the parties agreed they would file summary judgment motions regarding whether the Indiana Medical Malpractice Act applies to the facts of

this case ([Filing No. 66](#)).  Then on August 23, 2019, the parties filed their Cross-Motions for Summary Judgment.

## II.  SUMMARY JUDGMENT STANDARD

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 489–90 (7th Cir. 2007).  In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted).  "However, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007) (citation and quotation marks omitted).  Additionally, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted).  "The opposing party cannot meet this burden with conclusory statements or speculation but only with appropriate citations to relevant admissible evidence." *Sink v. Knox County Hosp.*, 900 F. Supp. 1065, 1072 (S.D. Ind. 1995) (citations omitted).

"In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits

of [the] claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citations and quotation marks omitted). "[N]either the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and quotation marks omitted).

These same standards apply even when each side files a motion for summary judgment. The existence of cross-motions for summary judgment does not imply that there are no genuine issues of material fact. *R.J. Corman Derailment Serv., LLC v. Int'l Union of Operating Eng'rs.*, 335 F.3d 643, 647 (7th Cir. 2003). The process of taking the facts in the light most favorable to the non-moving party, first for one side and then for the other, may reveal that neither side has enough to prevail without a trial. *Id.* at 648. "With cross-motions, [the court's] review of the record requires that [the court] construe all inferences in favor of the party against whom the motion under consideration is made." *O'Regan v. Arbitration Forums, Inc.*, 246 F.3d 975, 983 (7th Cir. 2001) (citation and quotation marks omitted).

### III.  DISCUSSION

The parties filed Cross-Motions for Summary Judgment on the sole issue of whether the Indiana Medical Malpractice Act ("MMA") applies to the facts of this case. If the MMA applies to this case, then Cutchin would be allowed to petition for payment of any excess damages from the PCF. But if the MMA does not apply to this case, then the PCF would not be available to Cutchin.

> Since its enactment in 1975, the MMA has dictated the statutory procedures for medical malpractice actions. The MMA is not all-inclusive for claims against healthcare providers, nor is it intended to be extended to cases of ordinary negligence. Instead, the MMA was designed to curtail, not expand, liability for medical malpractice. As such, the MMA is in derogation of common law and should be narrowly construed.

*G.F. v. St. Catherine Hosp., Inc.*, 124 N.E.3d 76, 84 (Ind. Ct. App. 2019) (internal citations

omitted).

> To fall within the purview of the MMA, a provider's conduct must be undertaken in the interest of, or for the benefit of, the patient's health. In other words, the conduct must be curative or salutary in nature or effect for the person claiming patient status under the MMA. The curative or salutary conduct must be directed toward the person to whom the provider owes a duty of care. Conversely, the MMA does not apply to conduct unrelated to the promotion of a patient's health or the provider's exercise of profession expertise, skill, or judgment.

*Id.* at 85 (internal citations and quotation marks omitted).

"A medical malpractice claim under the Act exists only when the substance of the claim

involves a causal connection between the negligence and the nature of the provider/patient

relationship." *Id.* Similarly, "the MMA applies where there is a causal connection between the

conduct complained of and the nature of the patient-health care provider relationship." *Anonymous*

*Hosp., Inc. v. Doe*, 996 N.E.2d 329, 333 (Ind. Ct. App. 2013). A "physician-patient relationship

is necessary to bring claims under the procedures of the MMA." *Id.* at 334.

The MMA defines "patient" as:

> [A]n individual who receives or should have received health care from a health care provider, under a contract, express or implied, and includes a person having a claim of any kind, whether derivative or otherwise, as a result of alleged malpractice on the part of a health care provider. Derivative claims include the claim of a parent or parents, guardian, trustee, child, relative, attorney, or any other representative of the patient including claims for loss of services, loss of consortium, expenses, and other similar claims.

Ind. Code § 34-18-2-22.

Cutchin argues that the PCF is foreclosed from contesting its liability for excess damages

because the MMA unequivocally establishes the PCF's liability when a health care provider settles

a claim with the claimant. He asserts that the settlement between the claimant and the health care

provider forecloses the issues of causation and proximate cause,[1] leaving only the issue of damages

to be decided.  As a result, Cutchin contends the PCF cannot litigate the applicability of the MMA

or the health care provider's liability after settlement. He argues under Indiana law, doctors have

a duty to warn their patients about the side effects of medications, and they may be liable to injured

third-parties for failing to do so.  In support of his argument, Cutchin relies on the cases of *Manley

v. Sherer*, 992 N.E.2d 670 (Ind. 2013); *Robertson v. B.O.*, 977 N.E.2d 341 (Ind. 2012); *Cram v.

Howell*, 680 N.E.2d 1096 (Ind. 1997); *McDaniel v. Robertson*, 83 N.E.3d 765 (Ind. Ct. App. 2017);

*Green v. Robertson*, 56 N.E.3d 682 (Ind. Ct. App. 2016); *Atterholt v. Robinson*, 872 N.E.2d 633

(Ind. Ct. App. 2007); *Rimert v. Mortell*, 680 N.E.2d 867 (Ind. Ct. App. 1997); *J.L. v. Mortell*, 633

N.E.2d 300 (Ind. Ct. App. 1994); *Dillon v. Callaway*, 609 N.E.2d 424 (Ind. Ct. App. 1993); and

*Dillon v. Glover*, 597 N.E.2d 971 (Ind. Ct. App. 1992).

Cutchin asserts that the only thing left to be done in this case is to conduct a hearing where

both sides may "introduce relevant evidence" to help the Court "determine the amount of

claimant's damages." Ind. Code § 34-18-15-3(5).  Cutchin contends that the PCF's argument that

his claim falls outside the scope of the MMA, is foreclosed by statute: "In approving a settlement

or determining the amount, if any, to be paid from the patient's compensation fund, the court shall

consider the liability of the health care provider as admitted and established." *Id.*

---

[1] In its Response Brief, the PCF asserted that proximate cause is disputed but not relevant, and further explained,

> [T]he issue of proximate cause is not relevant to the pending cross-motions for summary judgment.
> . . . However, because Plaintiff designated evidence that is potentially relevant to the issue of
> proximate cause, and in an abundance of caution so as not to waive the possibility that factual
> questions may arise on the issue of proximate cause, the PCF designates the Affidavit of Dr. Paul
> Axelsen and supporting documents.

(Filing No. 88 at 3.) In his Reply Brief, Cutchin argued that clearly the PCF contests liability, which is not permitted
under the MMA (Filing No. 91 at 6–7). The Court will not give further consideration to these arguments because at
this stage of the litigation, "the liability of the health care provider [is] admitted and established," Ind. Code § 34-18-
15-3(5), and is not relevant to the parties' summary judgment motions.

A review of the cases relied upon by Cutchin reveals that they do not stand for the proposition that the PCF is prohibited from challenging the applicability of the MMA to this case. The cases do not establish that the settlement between Cutchin and Providers 1 and 2 unequivocally established the PCF's liability. Instead, the proffered cases explain that the liability of (and necessarily the existence and proximate cause of injury as components of liability) the health care provider is admitted and established, not the liability of the PCF. The plain language of the statute itself, also states this: "the court shall consider the liability of the *health care provider* as admitted and established." Ind. Code § 34-18-15-3(5) (emphasis added). The cases cited by Cutchin discuss the PCF's opportunity to raise various issues even after a settlement between a claimant and the health care provider, with each case explaining that the PCF cannot challenge the liability of the *health care provider*. Challenging the liability of a health care provider is not the same as challenging the applicability of the MMA, and the PCF may do the latter.

From its very first participation in this case and throughout the litigation (including before Cutchin's settlement with Providers 1 and 2), the PCF consistently has argued that the MMA does not apply to this case. The PCF has not sat on its rights, conceded its own liability, or waived its arguments as Cutchin suggests. The Court concludes that the settlement between Cutchin and Providers 1 and 2 did not foreclose the PCF's opportunity to challenge the applicability of the MMA to this case and did not establish the PCF's liability.

In arguing for summary judgment, the PCF asserts that the MMA does not apply to the facts of this case because Claudine Cutchin and Adelaide Cutchin were never patients of Providers 1 or 2, and they cannot fit within the MMA's definition of "patient," which is a prerequisite to a claim under the MMA. Cutchin and Providers 1 and 2 cannot decide the scope of the MMA by their settlement agreement; that is a legal question for the Court.

The PCF argues persuasively, that under the plain language of the MMA and established caselaw, Claudine Cutchin and Adelaide Cutchin do not meet the statutory definition of a "patient" under the MMA, and therefore, Cutchin's claim does not fall within the scope of the MMA. The "medical malpractice is the breach of the duty owed by a healthcare provider to its patient. The duty arises from the contractual relationship entered into between the provider and the patient." *Madison Ctr., Inc. v. R.R.K.*, 853 N.E.2d 1286, 1288 (Ind. Ct. App. 2006). Without a healthcare provider-patient relationship, no MMA claim can exist.

The PCF notes the MMA's definition of "patient"—"an individual who receives or should have received health care from a health care provider, under a contract, express or implied, and includes a person having a claim of any kind, whether derivative or otherwise, as a result of alleged malpractice on the part of a health care provider." Ind. Code § 34-18-2-22. This statutory definition also provides, "[d]erivative claims include the claim of a parent or parents, guardian, trustee, child, relative, attorney, or any other representative of the patient including claims for loss of services, loss of consortium, expenses, and other similar claims." *Id.*

The PCF argues that, "[b]y definition, there is no 'contractual relationship' or 'special consensual relationship' between a provider and unknown third parties with whom a third-party may later be involved in an accident." (Filing No. 75 at 7.) Thus, with no relationship at all between Cutchin, Claudine Cutchin, and Adelaide Cutchin and Providers 1 and 2, Cutchin, Claudine Cutchin, and Adelaide Cutchin cannot be considered "patients" under the MMA. Cutchin, Claudine Cutchin, and Adelaide Cutchin never received medical care or treatment from Providers 1 and 2 and were never their patients.

The PCF directs the Court's attention to the case of *Preferred Prof. Ins. Co. v. West*, 23 N.E.3d 716 (Ind. Ct. App. 2014), where the plaintiff was working on an elevated "cherry picker".

The cherry picker was hit and knocked over by a truck operated by "Hart," and the plaintiff was injured. Hart was taking narcotic pain medication at the time of the accident. The plaintiff sued Hart's medical provider who prescribed the medication, arguing that the medical provider failed to warn Hart about the side effects and impairments of the medication. The Indiana Court of Appeals affirmed the trial court's determination that the allegations constituted claims of common law negligence, not medical malpractice, and thus did not fall within the scope of the MMA. *Id.* at 733. The Court of Appeals explained in detail why the plaintiff, an injured third-party, was not a "patient" under the MMA and thus could not bring an MMA claim. *Id.* at 729–33. The court noted, "[w]e do not believe the MMA was intended to cover claims by third parties having absolutely no relationship to the doctor or medical provider." *Id.* at 730.

The PCF additionally argues that Cutchin, Claudine Cutchin, and Adelaide Cutchin do not have a representative or derivative claim on behalf of the actual patient, in this case Watson. The MMA's definition of "patient" recognizes claims for parents, guardians, trustees, children, relatives, attorneys, and other representatives of the patient, but Cutchin, Claudine Cutchin, and Adelaide Cutchin did not have any representative relationship with Watson, who was the patient of Providers 1 and 2. The PCF argues Cutchin's claim is not derivative of health care provided to Watson; rather, his claim is based on Claudine Cutchin's and Adelaide Cutchin's automobile accident injuries.

In response, Cutchin argues, "An examination of the statutory definition of that term ["patient"], however, reveals that anyone claiming injury as a proximate result of malpractice qualifies as a patient for the purposes of the MMA." (Filing No. 87 at 7.) To make this argument, Cutchin focuses on portions of the language from the statute: "includes a person having a claim of any kind," and "as a result of alleged malpractice on the part of a health care provider." He

asserts, "[o]n its face, the statute encompasses, without limitation, any person asserting any claim resulting from alleged malpractice." *Id.* Cutchin asserts that the MMA's amendment to add the language "a claim of any kind" and "or otherwise" indicates that the definition is to be understood broadly and applies to claimants beyond just the person who actually received medical care or treatment from a medical provider. He contends that the Indiana Supreme Court has allowed recovery of damages under the MMA by non-patient, third-party claimants in similar factual situations. *See Manley v. Sherer*, 992 N.E.2d 670 (Ind. 2013); *Cram v. Howell*, 680 N.E.2d 1096 (Ind. 1997). Cutchin distinguishes the *West* case relied upon by the PCF on the basis that no settlement agreement was reached in the *West* case, whereas settlement has been achieved between Cutchin and Providers 1 and 2, and that settlement establishes the PCF's liability.

The Court begins by noting that Indiana courts have specifically considered and rejected Cutchin's argument concerning the "or otherwise" language in the MMA's definition of "patient". The "or otherwise" language cannot be used to broaden the definition of "patient" and to expand the scope of the MMA. *West*, 23 N.E.3d at 729–31. For the reasons explained in *West*, the Court also rejects Cutchin's attempt to meet the definition of "patient" by way of the "or otherwise" language.

Cutchin, Claudine Cutchin, and Adelaide Cutchin are not individuals who received or should have received health care from Providers 1 and 2. Furthermore, Cutchin, Claudine Cutchin, and Adelaide Cutchin are not a parent, guardian, trustee, child, relative, attorney, or any other representative of Watson, the patient who actually did receive health care from Providers 1 and 2. Therefore, under the statutory definition of "patient" for purposes of an MMA claim, Cutchin has failed to show that he, Claudine Cutchin, or Adelaide Cutchin is a patient.

Cutchin's attempt to distinguish the *West* case from this case on the basis of a settlement agreement is unavailing. The Court discussed above that the settlement between Cutchin and Providers 1 and 2 did not establish the PCF's liability and did not foreclose the PCF's opportunity to challenge the applicability of the MMA to this case.

Concerning the cases relied upon by Cutchin for the proposition that the Indiana Supreme Court has allowed recovery of damages under the MMA by non-patient, third-party claimants, the Court notes that in *Cram v. Howell*, the plaintiff filed a medical malpractice complaint against a physician, and the lower courts dismissed the complaint because a physician owed no duty to an unknown third-party. The Indiana Supreme Court reversed the dismissal and concluded that "generally physicians do not owe a duty to unknown nonpatients who may be injured by the physician's treatment of a patient." 680 N.E.2d at 1097. But the court determined under the facts and procedural posture of the case that the physician owed a duty to the injured non-patient, third-party utilizing the *ordinary negligence* analysis of *Webb v. Jarvis*, 575 N.E.2d 992 (Ind. 1991). The court did not analyze the issue of duty under the MMA. *Cram*, 680 N.E.2d at 1097–98. The court in *Cram* did not establish an MMA claim for injured non-patient, third-parties against physicians; rather, it held that in some situations a general negligence claim may arise against physicians. Therefore, the decision in *Cram* does not help Cutchin avoid summary judgment.

In the *Manley v. Sherer* case, the PCF was not a party to the case to challenge the applicability of the MMA. There, the plaintiffs filed a proposed medical malpractice complaint with the Indiana Department of Insurance against a doctor who failed to warn a patient about driving while using medication. However, when opposing the physician-defendant's motion for summary judgment, the plaintiffs changed course and argued the claim was not for medical malpractice subject to the MMA. The Indiana Supreme Court noted,

> We preliminarily reject the plaintiffs' claim that their action against Dr. Sherer and his medical group is not governed by the Indiana Medical Malpractice Act. The plaintiffs have treated it otherwise by filing their proposed complaint with the Department of Insurance as required by the Act. They may not now contend that the Medical Malpractice Act and its time limitation do not apply to their claim.

*Manley*, 992 N.E.2d at 674.

This Court agrees with the court of appeals' assessment of the *Manley* opinion in the *West* case.

> [W]e do not find that the Supreme Court's preliminary decision that the Manleys had waived any argument concerning the application of the MMA is controlling of our decision today. We consider the Supreme Court's remarks to be a comment particular to the facts and circumstances of the *Manley* case, not a statement of law.

*West*, 23 N.E.3d at 732. More recently, the court of appeals has reiterated, "the *West* court's interpretation of *Manley* is more in line with current precedents," and "[w]e find the interpretation of *Manley* by this court in [*West*] to be more persuasive. In *West*, we considered the supreme court's 'remarks to be a comment particular to the facts and circumstances of the *Manley* case, not a statement of law.'" *G.F.*, 124 N.E.3d at 89.

The Indiana Supreme Court's preliminary statement in *dicta*, rejecting the plaintiffs' position on the basis of waiver, did not address the substance of the claim and whether it actually fell within the scope of the MMA. To the extent Cutchin argues the *Manley* opinion allows a non-patient, third-party claimant to recover damages under the MMA, the Court notes that it was permitted only on the basis of waiver, not because the substance of the claim actually was within the scope of the MMA. The Court agrees with the Indiana Court of Appeals in *West*: "We do not believe the MMA was intended to cover claims by third parties having absolutely no relationship to the doctor or medical provider." 23 N.E.3d at 730.

Because Cutchin, Claudine Cutchin, and Adelaide Cutchin are not "patients" under the MMA, Cutchin's claim does not fall within the scope of the MMA, and the PCF is not available

to Cutchin for payment of any excess damages. Therefore, the PCF is entitled to summary judgment in its favor on Cutchin's request for declaratory relief.

## IV.    CONCLUSION

For the reasons stated above, the Court **GRANTS** Intervenor Defendant Stephen W. Robertson, Commissioner, Indiana Department of Insurance, Administrator of Indiana Patient's Compensation Fund's Motion for Summary Judgment (Filing No. 73) and **DENIES** Plaintiff Jeffrey B. Cutchin's Motion for Summary Judgment (Filing No. 76). Cutchin is not entitled to petition for payment of any excess damages from the PCF.

Final judgment will issue under separate order.

**SO ORDERED.**

Date: 3/9/2020

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Jean Marie Blanton
ZIEMER STAYMAN WEITZEL & SHOULDERS LLP
jblanton@zsws.com

Patrick A. Shoulders
ZIEMER STAYMAN WEITZEL & SHOULDERS
pshoulders@zsws.com

A. Richard M. Blaiklock
LEWIS WAGNER, LLP
rblaiklock@lewiswagner.com

Wade Dunlap Fulford
LEWIS WAGNER LLP
wfulford@lewiswagner.com